IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESTATE OF KEVIN SCHWING,            )
                                    ) Civil Action
            Plaintiff               ) No. 03-cv-04848
                                    )
        vs.                         )
                                    )
THE LILLY HEALTH PLAN;              )
THE ELI LILLY AND COMPANY LIFE      )
INSURANCE AND DEATH BENEFIT PLAN;   )
THE ELI LILLY AND COMPANY HEALTH    )
CARE FLEXIBLE SPENDING PLAN;        )
THE ELI LILLY AND COMPANY           )
DEPENDENT DAY CARE FLEXIBLE         )
SPENDING PLAN;                      )
THE LILLY SEVERANCE PAY PLAN;       )
THE ELI LILLY AND COMPANY           )
HOLIDAY AND VACATION PLAN;          )
THE LILLY DENTALPLUS PLAN;          )
PCS PHARMACY BENEFITS MANAGEMENT    )
SERVICE PROGRAM;                    )
THE LILLY EMPLOYEE SAVINGS PLAN;    )
THE LILLY RETIREMENT PLAN;          )
ELI LILLY AND COMPANY,              )
Individually and as Plan Sponsor,   )
Fiduciary and Administrator of      )
The Lilly Retirement Plan, and      )
The Lilly Severance Pay Plan,       )
and The Eli Lilly and Company       )
Holiday and Vacation Plan, and      )
The Lilly Health Plan, and          )
The Lilly DentalPlus Plan, and      )
PCS Pharmacy Benefits Management    )
Service Program;                    )
THE EMPLOYEE BENEFITS COMMITTEE,    )
As Administrator and Named          )
Fiduciary of The Lilly Retirement   )
Plan, and The Lilly Severance       )
Pay Plan, and The Eli Lilly and     )
Company Holiday and Vacation        )
Plan, and The Lilly Health Plan,    )
and The Lilly DentalPlus Plan,      )
and PCS Pharmacy Benefits           )
Management Service Program; and     )
LILLY GLOBAL SHARES STOCK           )
OPTION PLAN,                        )
                                    )
            Defendants              )

                              *     *     *

APPEARANCES:

            JOSEPH M. TODDY, ESQUIRE
                 On behalf of Plaintiff

            PHILIP J. GUTWEIN, II, ESQUIRE
                 On behalf of Defendants

                              *     *     *

                         O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

            This matter is before the court on Defendants' Petition

for Attorneys' Fees and Costs filed September 30, 2011.[1]

Plaintiff, Estate of Kevin Schwing's Response in Opposition to

Defendants' Petition for Attorneys' Fees and Costs was filed

October 14, 2011.[2]

---

        [1]     Together with their petition for attorneys' fees and costs,
defendants filed a Memorandum of Law in Support of Defendants' Petition for
Attorneys' Fees and Costs, plus nine exhibits.

        [2]     Together with its response in opposition, plaintiff filed
Plaintiff, Estate of Kevin Schwing's Memorandum of Law in Opposition to
Defendants' Petition for Attorneys' Fees and Costs.

            The Complaint in this matter was filed by plaintiff Kevin Schwing
in his individual capacity.  On page 5 of plaintiff's memorandum of law,
plaintiff's counsel indicates that while this matter was on appeal to the
United States Court of Appeals for the Third Circuit, Kevin Schwing died as a
result of a pulmonary embolism.  Plaintiff's counsel indicates that the Third
Circuit substituted the Estate of Kevin Schwing for Kevin Schwing as plaintiff
on the appeal docket.  That Order was also docketed in this court on June 19,
2008 (Document 111).  Below, when I refer to the plaintiff, I refer to Kevin
Schwing and not his estate unless specifically noted.

                                   -2-

Oral argument was conducted before me on May 3, 2012. The matter was taken under advisement.  Hence this Opinion.

For the following reasons, I deny Defendants' Petition for Attorneys' Fees and Costs.  Specifically, I conclude that defendants have shown some degree of success on the merits. However, after balancing the five factors outlined by the United States Court of Appeals for the Thitrd Circuit in Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983), I exercise my discretion to deny defendants an award of attorneys' fees and costs in this case.

<u>JURISDICTION</u>

This court has jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff's complaint alleges that defendants denied him benefits to which he was entitled pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 to 1461 ("ERISA"), and thus poses a federal question. The court has exclusive jurisdiction over this ERISA action pursuant to  29 U.S.C. § 1132(e)(1) because plaintiff Kevin Schwing brought this civil action as a participant in a benefits plan governed by ERISA.  The court has supplemental jurisdiction over plaintiff's pendent state law claims.  See 28 U.S.C. § 1367.

-3-

<u>VENUE</u>

Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) because one or more of the defendants may be found in this judicial district.

<u>PROCEDURAL HISTORY</u>

On August 22, 2003, plaintiff Kevin Schwing, now deceased, filed a six-count Complaint against the various defendants in this case.[3]

Count One of plaintiff's Complaint alleges a cause of action--against defendants Eli Lilly and Company, Individually, and as Plan Sponsor, Fiduciary and Administrator of six of the ten benefit plans and programs; The Lilly Health Plan; and The Employee Benefits Committee as Administrator and Named Fiduciary of the same six benefit plans and programs--pursuant to ERISA for failure to provide adequate notice of COBRA benefits to plaintiff

---

[3]     The 13 defendants named in plaintiff's Complaint are: (1) The Lilly Health Plan; (2) The Eli Lilly and Company Life Insurance and Death Benefit Plan; (3) The Eli Lilly and Company Health Care Flexible Spending Plan; (4) The Eli Lilly and Company Dependent Day Care Flexible Spending Plan; (5) The Eli Lilly Severance Pay Plan; (6) The Eli Lilly and Company Holiday and Vacation Plan; (7) The Lilly DentalPlus Plan; (8) PCS Pharmacy Benefits Management Service Program; (9) The Lilly Employee Savings Plan; (10) The Lilly Retirement Plan; (11) Eli Lilly and Company, Individually and as Plan Sponsor, Fiduciary and Administrator of The Lilly Retirement Plan, and The Lilly Severance Pay Plan, and The Eli Lilly and Company Holiday and Vacation Plan, and The Lilly Health Plan, and The Lilly DentalPlus Plan, and PCS Pharmacy Benefits Management Service Program; (12) The Employee Benefits Committee, As Administrator and Named Fiduciary of The Lilly Retirement Plan, and The Lilly Severance Pay Plan, and The Eli Lilly and Company Holiday and Vacation Plan, and The Lilly Health Plan, and The Lilly DentalPlus Plan, and PCS Pharmacy Benefits Management Service Program; and (13) Lilly GlobalShares Stock Option Plan.

as required by 29 U.S.C. § 1166(a)(4)(A) and failure to pay benefits pursuant to 29 U.S.C. § 1132(a)(1).

Count Two alleges a cause of action against eight of the ten defendant employee benefit plans and programs[4], pursuant to ERISA seeking payment of benefits under those plans and programs, and requesting an Order directing those plans and programs to give plaintiff proper notification of his rights and benefits pursuant to COBRA.

Count Three alleges a claim for interference with pension benefits against defendants The Lilly Retirement Plan, and The Lilly Employee Savings Plan in violation of ERISA (29 U.S.C. § 1140).

Count Four avers a breach of fiduciary duties by defendant Eli Lilly and Company in violation of ERISA.

Count Five is a claim for attorneys' fees and costs in the event plaintiff prevails pursuant to ERISA.

Finally, Count Six is a Pennsylvania state-law claim for breach of contract against defendants Eli Lilly and Company and Lilly GlobalShares Stock Option Plan, relating to stock

---

[4]     The eight defendant benefit plans and programs being sued in Count Two are (1) The Lilly Health Plan, (2) The Eli Lilly and Company Life Insurance and Death Benefit Plan, (3) The Eli Lilly and Company Health Care Flexible Spending Plan, (4) The Eli Lilly and Company Dependent Day Care and Flexible Spending Plan, (5) The Lilly Severance Pay Plan, (6) The Eli Lilly and Company Holiday and Vacation Plan, (7) The Lilly DentalPlus Plan and (8) PCS Pharmacy Benefits Management Service Program.

options, and against defendant Eli Lilly and Company for

reimbursement of expenses incurred by plaintiff.

Defendants were all served with plaintiff's Complaint

by United States Certified Mail between September 8 and 15,

2003.[5]

By Stipulation for Extension of Time to Respond to

Complaint, approved by the Clerk of Court under former Rule

7.4(b)(2) of the Rules of Civil Procedure for the United States

District Court for the Eastern District of Pennsylvania,[6] filed

October 1, 2003, the parties agreed to give defendants until

October 29, 2003 to "answer, move or otherwise respond to the

Complaint in this matter...."[7]

On October 29, 2003 Defendant's [sic] Answer to

Plaintiff's Complaint was filed.  The answer contained

defendants' responses to the allegations contained in plaintiff's

Complaint and contained sixteen defenses, including: failure to

exhaust administrative remedies (Sixth Defense); plaintiff was

not a participant in certain plans (Twelfth Defense); certain

plans do not exist (Thirteenth Defense); the GlobalShares plan

---

[5]     See Affidavits of Service concerning the service of original
process on various defendants between September 8 and 15, 2003 at Docket
Entries 2 through 14.

[6]     Subsequent to the commencement of this litigation, former Local
Rule 7.4(b)(2) was amended to require court approval for all extensions of
time to respond to a complaint.

[7]     See Stipulation for Extension of Time to Respond to Complaint,
which stipulation was filed October 1, 2003 (Document 15).

can not be sued (Fourteenth Defense); and plaintiff lacks standing to bring his claims (Sixteenth Defense).

By Stipulation of Dismissal With Prejudice as to Certain Named Defendants filed April 16, 2004, defendants The Lilly DentalPlus Plan, PCS Pharmacy Benefits Management Service Program and The Lilly Employee Savings Plan were dismissed as parties to this action, with prejudice.  It was further stipulated that each party would bear its own attorneys' fees and costs.

On May 5, 2004, I conducted a Rule 16 status conference by telephone conference call with counsel for the parties. During the telephone conference, I, among other things, set deadlines for production of defendants' Rule 26(a) initial disclosures, production of expert witness reports by all parties, and filing dispositive motions.  I also set a trial date.  Those deadlines were memorialized in my Rule 16 Status Conference Order dated May 5, 2004 and filed May 21, 2004.

By Stipulation of Dismissal With Prejudice filed January 10, 2005, Count III was dismissed from the Complaint, and four of the defendants were dismissed as parties to this action with prejudice.[8]  There is no mention in this stipulation regarding attorneys' fees and costs.

---

[8]     The four defendants dismissed on January 10, 2005 were: (1) The Lilly Health Plan, (2) The Eli Lilly and Company Life Insurance and Death Benefit Plan, (3) The Eli Lilly and Company Dependent Day Care Flexible Spending Plan and (4) The Lilly Retirement Plan.

By my Order dated February 16, 2005 and filed February 17, 2005, Defendants' Motion for Summary Judgment filed November 30, 2004 was granted in part and denied in part and Plaintiff's Motion for Summary Judgment filed November 30, 2004 was denied in its entirety.

Specifically, Defendants' Motion for Summary Judgment regarding Count One of plaintiff's Complaint was granted as unopposed by consent.

Defendants' Motion for Summary Judgment regarding Count Two of plaintiff's Complaint was granted in part and denied in part. As noted above, by two prior stipulations of the parties, seven of the defendant benefit plans and programs were dismissed from this action.[9] In all other respects, summary judgment on Count Two was denied.

By prior agreement of counsel, Count Three of plaintiff's Complaint was dismissed. Moreover, Count Four of plaintiff's Complaint was dismissed by consent. Defendants' Motion for Summary Judgment regarding Count Five of plaintiff's Complaint was denied.

Finally, Defendants' Motion for Summary Judgment regarding Count Six of plaintiff's Complaint was granted in part

---

[9]     The seven defendants previously dismissed were: (1) The Lilly DentalPlus Plan, (2) PCS Pharmacy Benefits Management Service Program, (3) The Lilly Employee Savings Plan, (4) The Lilly Health Plan, (5) The Eli Lilly and Company Life Insurance and Death Benefit Plan, (6) The Eli Lilly and Company Dependent Day Care Flexible Spending Plan, and (7) The Lilly Retirement Plan.

and denied in part.  Summary judgment was granted on Count Six of plaintiff's Complaint as it related to stock options.  Summary judgment was denied on Count Six as it related to plaintiff's claim for reimbursement of expenses.

A non-jury trial was held before me on March 1, 2, 3, 4, 7 and 8, 2005.  Closing arguments were conducted on November 22, 2005.  Defendants' Post-Trial Brief was filed February 17, 2006. On February 27, 2006 Plaintiff, Kevin Schwing's Post-trial Brief was filed.

On September 29, 2006, after post-trial briefing and closing arguments, I issued an Adjudication and Verdict in favor of plaintiff Kevin Schwing and against defendants Eli Lilly and Company, The Lilly Severance Pay Plan, and The Employee Benefits Committee, in the amount of $102,130 on plaintiff's claim for benefits under the severance pay plan.

Furthermore, I found in favor of defendants Eli Lilly and Company, The Eli Lilly and Company Holiday and Vacation Plan, and The Employee Benefits Committee, and against plaintiff Kevin Schwing, on plaintiff's claim for vacation benefits.  In addition, I found in favor of defendants Eli Lilly and Company, The Eli Lilly and Company Health Care Flexible Spending Plan, and The Employee Benefits Committee, and against plaintiff Kevin Schwing, on plaintiff's claim for medical benefits.

-9-

I also found in favor of defendants Eli Lilly and Company, the Lilly Global Shares Stock Option Plan, and The Employee Benefits Committee, and against plaintiff Kevin Schwing, on plaintiff's claim for stock options.  Finally, I found in favor of defendant Eli Lilly and Company, and against plaintiff Kevin Schwing, on plaintiff's claim for reimbursement of his final expenses.

On October 26, 2006 defendants appealed my September 29, 2006 Verdict and Adjudication.  On April 14, 2009 the United States Court of Appeals for the Third Circuit reversed that portion of my Verdict, and entered judgment in favor of defendants, regarding plaintiff's claim under the severance plan.[10]  On November 23, 2012 plaintiff filed a petition for writ of certiorari with the United States Supreme Court.  On January 24, 2011 certiorari was denied by the Supreme Court.

By my Order dated September 6, 2011 Plaintiff, Kevin Schwing's Petition for Attorneys' Fees and Costs, which petition was filed November 15, 2006 (Document 99) and Defendants' Petition for Attorneys' Fees and Costs, which petition was filed November 15, 2006 (Document 100) were both dismissed.  Plaintiff's petition was dismissed as moot because he is no longer the prevailing party.  Defendants' petition was dismissed without prejudice to refile.

---

[10]    See  Estate of Schwing v. Lilly Health Plan, 562 F.3d 522 (3d Cir. 2009).

-10-

<u>DISCUSSION</u>

Defendants contend that they have met the standard for an award of attorneys' fees and costs in this matter. Defendants seek attorneys' fees in the amount of $332,987.43 and costs in the amount of $29,655.64, for total fees and costs of $362,643.07.

Defendants further contend that plaintiff had only one plausible claim, a claim for severance benefits which involved, at most, three defendants.  Defendants place blame on plaintiff's counsel for suing thirteen defendants on six different causes of action.  Thus, defendants seek that attorneys' fees and costs be paid by plaintiff's counsel, and not by plaintiff or his estate.

On the other hand, plaintiff contends that defendants' petition for attorneys' fees is "unprecedented".  Specifically, plaintiff contends that there is no reported case of a defendant being awarded attorneys' fees and costs after losing an ERISA case at trial and winning on appeal.  Moreover, plaintiff contends that his counsel acted in a completely appropriate manner in moving this case from the filing of the Complaint through trial and appeal and that defendants are not entitled to an award of attorneys' fees and costs.

Section 502 of ERISA provides that "the court in its discretion may allow a reasonable attorneys' fee and costs of action to either party.  29 U.S.C. § 1132(g)(1); <u>Ursic v.</u>

<u>Bethlehem Mines</u>, 719 F.2d 670, 673 (3d Cir. 1983).  Fees may be assessed against either the party or the attorney.  <u>Loving v. Pirelli Cable Corporation</u>, 11 F.Supp.2d 480, 495 (D.Del. 1998) (McKelvie, J.).

However, Section 502 does not automatically mandate an award to a prevailing party.  <u>See</u> <u>Iron Workers Local No. 272 v. Bowen</u>, 624 F.2d 1255, 1265 (5th Cir. 1980).  To be eligible for an award of attorneys' fees and costs, a party need not be a prevailing party, but only needs to have achieved "some degree of success on the merits."  <u>Hardt v. Reliance Standard Life Insurance Company</u>, ___ U.S. ___, ___, 130 S.Ct. 2149, 2158-2159, 176 L.Ed.2d 998, 1009-1010 (2010).  On the other hand, this requirement is not satisfied by obtaining "trivial success on the merits" or "purely procedural victory".  , ___ U.S. at ___, 130 S.Ct. at 2158, 176 L.Ed.2d at 1009.

After determining that a party has achieved some degree of success on the merits, it is appropriate, but not mandated, for the court to address five factors outlined in <u>Ursic</u>, <u>supra</u>, to determine whether an award of attorneys' fees and costs is proper.  Review of the five factors is not mandated because there is no obvious relation of the five factors to section 1132(g)(1)'s text or to the Supreme Court's fee shifting jurisprudence.  <u>Hardt</u>, <u>supra</u>.

However, because both parties addressed the <u>Ursic</u>
factors in their respective memoranda of law, because I find the
factors are somewhat helpful in guiding the exercise of my
discretion, and because district courts have tended to continue
to apply the <u>Ursic</u> factors after the Supreme Court's decision in
<u>Hardt</u>,[11] I will address the <u>Ursic</u> factors here.

The five <u>Ursic</u> factors are:

> (1) the offending parties' culpability or bad
> faith; (2) the ability of the offending parties to
> satisfy an award of attorneys' fees; (3) the
> deterrent effect of an award of attorneys' fees
> against the offending parties; (4) the benefit
> conferred on members of the pension plan as a
> whole; and (5) the relative merits of the parties'
> position.

<u>Ursic</u>, 719 F.2d at 673.

In ruling on a request for attorneys' fees and costs, I
should articulate my analysis and conclusions on each of the five
<u>Ursic</u> factors.  <u>McPherson v. Employees' Pension Plan of American</u>
<u>Re-Insurance Company, Inc.</u>, 33 F.3d 253, 254 (3d Cir. 1992).
Moreover, in considering the five factors, I must consider each
"in balance and in relationship to the others."  <u>Ellison v.</u>
<u>Shenango Incorporated Pension Board</u>, 956 F.2d 1268, 1278 (3d Cir.
1992).  "However, the factors are flexible guidelines, and no

---

[11]   <u>See, e.g.</u>, <u>Fama v. Design Assistance Corporation</u>, 2012 U.S.Dist.
LEXIS 56383 (D.N.J. Apr. 20, 2012)(Hillman, J.); and <u>Glunt v. Life Insurance</u>
<u>Company of North America</u>, 2012 U.S.Dist. LEXIS 35710 (E.D.Pa. Mar. 16,
2012)(Schiller, J.).

single factor is determinative."   <u>Glunt</u>, 2012 U.S.Dist. LEXIS
at *5.

<u>Degree of Success on the Merits</u>

As noted above, the first step in analyzing defendants'
petition is to determine whether defendant has "achieved some
degree of success on the merits".   <u>Hardt</u>, <u>supra</u>.

Here, defendants contend that they have established a
degree of success on the merits because (1) plaintiff withdrew
many of the claims through the two stipulations filed on
April 16, 2004 and January 11, 2005; (2) plaintiff consented to
dismissal of certain claims at the summary judgment stage;
(3) defendants were victorious at trial on three of the four
claims that went to trial; and (4) defendants were victorious
when the Third Circuit Court of Appeals reversed my Verdict in
favor of plaintiff on the severance claim.

On the other hand, plaintiff contends that dismissal of
claims by way of stipulation based upon plaintiff's consent does
not constitute "success on the merits".   Rather, plaintiff
contends that his voluntary dismissal of claims is "trivial
success on the merits" or a "purely procedural victory".   This
analysis applies to the seven claims dismissed prior to trial
with plaintiff's consent[12] to the stipulations of dismissal, and

---

[12]     The seven claims dismissed on stipulation prior to trial were
claims against (1) The Lilly DentalPlus Plan; (2) PCS Pharmacy Benefits

(<u>Footnote 12 continued</u>):

plaintiff's consent to dismiss certain claims at the summary judgment stage.[13]  However, plaintiff admits that defendant did achieve some degree of success on the claims which they won at trial and on appeal.[14]

Because plaintiff admits that defendant has achieved some degree of success on at least some aspects of plaintiff's Complaint, I conclude that defendants satisfy the "some degree of success standard".  Therefore, it is unnecessary for me to determine whether voluntary dismissal of certain of plaintiff's claims constitute more than "trivial success on the merits" or a "purely procedural victory" by defendants.

<u>Application of the Ursic Factors</u>

**Plaintiff's Culpability and Bad faith**

Defendants contend that plaintiff's counsel engaged in culpable conduct and acted in bad faith in filing an overbroad Complaint and by not conducting at least minimal research that would have revealed the non-existence of two original defendants,

---

(<u>Continuation of footnote 12</u>):

Management Service Program; (3) The Lilly Health Plan; (4) The Eli Lilly and Company Life Insurance and Death Benefit Plan; and (5) The Eli Lilly and Company Dependent Day Care Flexible Spending Plan; (all five dismissed from Count Two of the Complaint); (6) The Lilly Employee Savings Plan; and (7) The Lilly Retirement Plan, (contained in Count Three which was dismissed in its entirety).

[13]     At the summary judgment stage plaintiff consented to dismissal of Counts One and Four of the Complaint.

[14]     See Plaintiff, Estate of Kevin Schwing's Memorandum of Law in Opposition to Defendants' Petition for Attorneys' Fees and Costs, page 10, n.5.

and plaintiff's failure to exhaust administrative remedies for nearly all of his claims.  Defendants further contend that plaintiff was not willing to withdraw baseless claims which required defendants to expend time and resources by conducting discovery and filing dispositive motions.

Furthermore, defendants assert that plaintiff served nine requests for written discovery and production of documents. Defendants argue that those discovery requests focused to a significant extent on claims that were without merit.  Defendants rely on a number of cases in support of their contention that plaintiff's counsel engaged in culpable conduct or acted in bad faith.[15]

Plaintiff contends that his counsel acted appropriately in this case because defendant was in possession of almost all of the evidence concerning plaintiff's claims, thus, plaintiff needed discovery.  Moreover, plaintiff contends that his counsel acted appropriately in narrowing the issues throughout discovery, at the summary judgment stage, and finally at trial.  In addition, plaintiff contends that his counsel offered to attempt to narrow the issues further, but counsel's overtures were not responded to by defense counsel.

---

[15]    See Monkelis v. Mobay Chemical, 827 F.2d 935 (3d Cir. 1987); Childers v. MedStar Health, 289 F.Supp.2d 714 (D.Md. 2003); McNaboe v. NVF Company, 2002 WL 31496655 (D.Del. Oct. 31, 2002); and Loving v. Pirelli Cable Corporation, 11 F.Supp.2d 480 (D.Del. 1998).

Finally, plaintiff contends that defendants' contention that they were forced to respond to numerous discovery requests regarding the dismissed claims is without merit. Specifically, plaintiff contends that while its first set of interrogatories and document requests were addressed to all the claims in the complaint (and sent to defendant prior to dismissal of any claim), the seven other discovery requests related to plaintiff's claim for denial of severance benefits that plaintiff won at trial and lost on appeal. Hence, plaintiff argues that defendants' representation that they were forced to respond to numerous discovery requests on claims that were ultimately dismissed by plaintiff is untrue.

For the following reasons, I conclude that neither plaintiff, nor plaintiff's counsel engaged in culpable conduct or acted in bad faith in the prosecution of plaintiff's claims.

Attorneys' fees and costs may be awarded by a showing of bad faith or ulterior motive, as well as "blamable or reprehensible conduct involving the breach of a legal duty or the commission of a fault. Glunt, 2012 U.S.Dist. LEXIS at *6. Such conduct requires a showing of more than simple negligence, but less than malice or guilty purpose. McPherson, 33 F.3d at 257. Moreover, "[a] party is not culpable merely because it has taken a position that did not prevail in litigation. Id.

-17-

In their memorandum of law defendants, forcefully assert numerous that plaintiff's Complaint was frivolous and that plaintiff's counsel knew it all along.  However, defendants did not file a motion to dismiss plaintiff's Complaint.  Rather, defendants answered the Complaint and included sixteen defenses as part of their answer.

The defenses included issues which are routinely raised by defendants in a motion to dismiss.  These defenses include the following: (1) plaintiff failed to exhaust administrative remedies (Sixth Defense); (2) plaintiff was not a participant in certain plans (Twelfth Defense); (3) certain plans do not exist (Thirteenth Defense); (4) the GlobalShares plan was not subject to being sued (Fourteenth Defense); and (5) plaintiff lacked standing to bring his claims (Sixteenth Defense).

If plaintiff's Complaint were as frivolous as defendants now assert, defendants would have filed a motion to dismiss those claims based upon the forgoing defenses which are routinely raised by motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants' failure to file a motion to dismiss belies their allegations of frivolous-ness against plaintiff and his counsel.

In addition, after reviewing of the nine discovery requests propounded by plaintiff,[16] I agree with plaintiff that

---

[16]   See Exhibit F to defendants' petition and memorandum.

-18-

while the first request for interrogatories and document requests involved all of plaintiff's claims and all defendants, the remaining discovery requests did not involve the dismissed claims or the defendants.  Rather, plaintiff's later discovery requests related to his severance benefit claim.

I further conclude that the actions of plaintiff's counsel were not taken in bad faith, nor did they or constitute culpable conduct.  Specifically, as plaintiff's counsel obtained discovery on certain claims and defendants, he appropriately agreed to dismissal of those claims and the corresponding defendants.  In response to defendants' motion for summary judgment, plaintiff's counsel further limited the claims and issues involved in this case by agreeing to their dismissal after completion of all discovery.

Furthermore, plaintiff's counsel responded to defendants' request to dismiss certain defendants and claims when requested by defendants.  Finally, counsel for plaintiff offered to discuss limiting other claims, but defense counsel never responded to that offer.

Regarding the four claims which survived summary judgment and proceeded to trial, having previously found the existence of disputes concerning genuine issues of material fact precluding the grant of summary judgment, I cannot now conclude that those claims were brought, or maintained, by plaintiff in

-19-

bad faith.  Plaintiff lost three of those claims at trial, but
prevailed on his claim for severance benefits.  While a portion
of my Verdict was eventually overturned on appeal, it is not
clear that the severance claim or any of the other claims that
survived summary judgment were frivolous.

I also conclude that a large portion of the attorneys'
fees and costs sought in this case relate to plaintiff's claim
for severance benefits.  Moreover, if defendants had filed a
motion to dismiss, much of the additional work by defendants in
this case on what they now term frivolous claims may not have
been necessary.

Next, I find factually and procedurally inapposite the
cases cited by defendants in support of their contention that
plaintiff's claims were frivolous and that the conduct of counsel
for plaintiff was culpable and in bad faith.

In Monkelis v. Mobay Chemical, 827 F.2d 935 (3d Cir.
1987), the United States Court of Appeals for the Third Circuit
affirmed an award of attorneys' fees to defendant where
plaintiff's ERISA claim was a rehash of the same facts which had
been found against plaintiff in a previously filed wrongful
discharge claim in state court.  The Third Circuit found that the
facts underlying the case had been fully developed in the earlier
state court litigation and decided by jury verdict in favor of

defendant.  Thus, the Third Circuit upheld the award of
attorneys' fees to defendant.

In Childers v. MedStar Health, 289 F.Supp.2d 714
(D.Md. 2003), the district court awarded attorneys' fees to
defendant after granting defendant's motion to dismiss in a case
where plaintiff's counsel admitted that the case was brought for
the ulterior motive of pursuing the case to advance a malpractice
suit against plaintiff's previous attorney, notwithstanding
counsel's knowledge of the legal and factual infirmities of the
federal action.  Accordingly, the district court found that
plaintiff's counsel acted in bad faith.  289 F.Supp.2d at 718.

As in Childers, the district court in McNaboe v. NVF
Company, 2002 WL 31496655 (D.Del. Oct. 31, 2002), granted
defendants' request for attorneys' fees and costs because the
court found that plaintiff's ERISA claim was brought, not to
protect important pension benefits, but rather for the ulterior
motive of ensuring federal jurisdiction over what was essentially
a breach of contract action.

Finally, in Loving v. Pirelli Cable Corporation,
11 F.Supp.2d 480 (D.Del. 1998), the district court awarded fees
and costs to defendants' attorneys after granting defendants'
motion to dismiss claims that had been previously dismissed on
summary judgment in another case involving nearly identical
allegations that were ruled to be time-barred.

None of the cases cited by defendants in this regard are to be factually or procedurally similar to the instant case. Here, defendants did not file a motion to dismiss.  Most of the claims here were dismissed by plaintiff after completion of discovery on those particular claims.  Moreover, as I have concluded above, the claims which survived summary judgment and proceeded to trial were not brought in bad faith.  Thus, defendants' reliance on the four above-cited cases is misplaced and unhelpful and do not support their petition for attorneys' fees and costs.

Finally, by Stipulation of Dismissal With Prejudice as to Certain Named Defendants filed April 16, 2004, defendants The Lilly DentalPlus Plan, PCS Pharmacy Benefits Management Service Program, and The Lilly Employee Savings Plan were dismissed as parties in this action.  That stipulation included a provision that "each party [is] to bear its own attorneys' fees and costs." I find it inappropriate that defendants now seek attorneys' fees and costs on claims on which defendants agreed they would bear their own fees and costs.

Accordingly, for all the foregoing reasons, I conclude that neither plaintiff, nor his counsel, engaged in culpable conduct or brought claims in bad faith.  Thus, I conclude that this factor weighs in favor of plaintiff and against an award of attorneys' fees and costs in favor of defendant.

-22-

**Ability of the Offending Parties to Satisfy an Award of
Attorneys' Fees**

Regarding the second <u>Ursic</u> factor, defendants assert
that plaintiff's counsel, the law firm of Zarwin, Baum, Devito,
Kaplan Schaer & Toddy, P.C., is a preeminent law firm with over
60 attorneys among four offices located in two states.
Defendants further contend that according to the law firm
website, plaintiff's counsel has a client base spanning several
industries, including banking, insurance, petroleum and real
estate.  Thus, defendants argue that plaintiff's counsel should
have the means to pay defendants' attorneys' fees and costs in
this matter.

To the contrary, plaintiff's counsel contends that it
does not have the ability to pay defendants' legal fees and
costs; and that making an unsupported, blanket statement
regarding the type of clients the law firm represents does not
establish plaintiff counsels' ability to pay.

I conclude that neither party has established whether
plaintiff's counsel does or does not have ability to pay an award
of fees and costs.  Thus, I conclude that this factor neither
weighs in favor of, nor against, an award of attorneys' fees.

## Deterrent Effect of an Award of Attorneys' Fees Against the Offending Parties

The third <u>Ursic</u> factor I may consider is the deterrent effect of an award of attorneys' fees against the offending parties.  Defendants contend that the award of attorneys' fees and costs will have the desirable effect of deterring speculative litigation based on thin grounds.  Moreover, defendants argue that plaintiff's counsel will be deterred in the future from engaging in baseless, speculative litigation on behalf of other clients and will hopefully be mindful of their duty to pursue only colorable claims, the merits of which they have established through due diligence.

Plaintiff contends that an award of attorneys' fees and costs will have no deterrent effect because they have taken no action that needs to be deterred.  Furthermore, plaintiff contends that an award of attorneys' fees and costs in this case will have the opposite effect of deterrence.  Rather, it will have a chilling effect on attorneys bringing ERISA claims because they will be fearful that they must turn down potentially meritorious claims for fear that losing at trial, having their claims dismissed at summary judgment, or even a victory overturned on appeal, may cost them and their law firms hundreds of thousands of dollars.

I conclude that granting defendants' attorneys' fees and costs based upon the factual and procedural circumstances of this case would have a chilling effect on other plaintiffs seeking to recover benefits under ERISA plans.  As noted by my former colleague Senior District Judge Lowell A. Reed, Jr., "[d]eterring those with reasonable claims from litigating their actions would not further the goals of ERISA."  Foley v. International Brotherhood of Electrical Workers Local Union 98 Pension Fund, 2002 U.S.Dist. LEXIS 7236 at *12 (E.D.Pa. Apr. 23, 2002).[17]

Here, plaintiff's counsel narrowed the scope of this litigation throughout the process of discovery, dispositive motions and trial.  The bulk of discovery related to plaintiff's severance claim, which went to trial, and not to the other claims which were dismissed or withdrawn before trial.  I agree with plaintiff that attorneys may become less amenable to accepting clients who want to bring ERISA claims if the attorneys fear that the attorneys may be subject to awards against them for

---

[17]   My research has not disclosed any cases where a defendant was awarded attorneys' fees and costs after the plaintiff was victorious at trial on the main aspect of the litigation, and the decision was overturned on appeal.  The Foley case is the closest analogous case presented by either party because it involves a matter where the original verdict was in favor of plaintiff (but that decision was overturned on direct appeal).

However, in that case my former colleague, Senior Judge Reed, denied defendants' motion for attorneys' fees and costs and his decision was upheld on appeal.  See Foley v. International Brotherhood of Electrical Workers Local Union 98 Pension Fund, 2003 U.S.App. LEXIS 12437 (3d Cir. Apr. 11, 2003), cert. denied International Brotherhood of Electrical Workers Local Union 98 Pension Fund v. Foley, 540 U.S. 876, 124 S.Ct. 264, 157 L.Ed.2d 139 (2003).

significant attorneys' fees and costs, even if the case survives all the way to trial, is successful there, and is overturned on appeal.

Accordingly, I conclude that this factor weighs in favor of plaintiff, and against an award of attorneys' fees and costs.

**The Benefit Conferred on Members of the Pension Plan as a Whole**

Regarding the fourth <u>Ursic</u> factor, defendants admit that any benefit of awarding attorneys' fees and costs to them for other plan members is indirect because defendant Eli Lilly and Company paid the defense costs for all defendants from its general assets, not from assets of any employee benefit plan. However, defendants argue that the expense of maintaining and administering employee benefit plans is relevant to all plan sponsors. Defendants further argue that as a result of an award of attorneys' fees and costs to a plan sponsor in this case, it is less likely that a plan sponsor will reduce the level of benefits it agrees to provide its employees in response to similar baseless litigation.

Plaintiff contends that an award of attorneys' fees and costs in this case will not confer any benefit on the members of the plans involved in this case. Plaintiff does not dispute that there are costs associated with administrating an employee benefit plan. The cost of litigation is one of them. However,

-26-

plaintiff argues that in a company with 13 billion dollars in sales, a severance pay determination of even a million dollars (greater than the amount claimed here) would have little to no impact on defendant Eli Lilly and Company.

I conclude that because there is no significant direct benefit that the plans involved in this litigation would receive, this factor does not weigh in defendants favor.  See Foley, 2002 U.S.Dist. LEXIS at *12.

### The Relative Merits of the Parties' Positions

The final factor I must analyze is the relative merits of the parties' positions.  Defendants contend that because they ultimately prevailed on all claims, the merits of the defendants' position is superior to the merits of plaintiff's position.

Plaintiff contends that he was the victor at trial on his claim for severance benefits and that there was sufficient evidence in the record to support a finding in his favor on the vacation claim.

Where a dispute is rooted in different, but reasonable, interpretations of undisputed facts, a claim is not so groundless as to support an inference of culpability.  Moreover, the first and fifth Ursic factors are related to one another.  Where plaintiff's claims are patently without merit under the fifth factor, the court may find bad faith under the first.  Foley, supra.

-27-

Here, I have already determined that neither plaintiff, nor his counsel engaged in any culpable conduct or acted in bad faith.  Defendant did ultimately prevail on all the claims raised by plaintiff, but a losing party is not culpable merely because it has taken a position that did not prevail in the litigation. McPherson, 33 F.3d at 257.

In assessing the relative merits of each parties positions, I conclude that I must give a slight edge to defendants because they were the ultimate victors in this case. However, plaintiff's claims do not rise to the level of being patently meritless.

### Weighing Ursic Factors

Finally, my consideration of all five factors reveals the first and third factors favor plaintiff.  The second factor favors neither party.  The fourth factor does not favor defendant, but has nothing really to do with plaintiff.  Finally, the fifth factor favors defendant slightly as the overall victor in this litigation.

However, in weighing each factor, I am ultimately guided by the fact that in the cases where defendants have been granted attorneys' fees and costs, the lack of any merit was clear.  See Monkelis, supra; Loving, supra.  The other type of case where it is appropriate to grant attorneys' fees and costs

-28-

to defendants, is where plaintiff had some ulterior motive for filing suit.  See Childers, supra; McNaboe, supra.

I conclude that this case is not of the nature of cases where previous courts have granted attorneys' fees and costs to defendants.  Rather, this case is more like former Senior Judge Reed's case in Foley, supra., where such fees and costs were not awarded.  Thus, I find more weight to the factors on plaintiff's side of this ledger than on defendants side.

Furthermore, I am guided by the fact that, in their petitions, three of the defendant benefit plans and programs seek attorneys' fees and costs for each of their dismissed claims, despite the fact that in their stipulations of dismissal, each of those defendants agreed to bear its own attorneys' fees and costs.

Finally, while any fee breakdown on a claim-by-claim basis would be extraordinarily difficult, Foley, 2002 U.S.Dist. LEXIS at *11, if I were to consider a claim-by-claim analysis, the manner in which defendant broke down its fees and costs into different phases is not helpful.

<u>CONCLUSION</u>

For all the foregoing reasons, and in the exercise my discretion, I deny Defendants' Petition for Attorneys' Fees and Costs.

-29-